**MAYER BROWN LLP**
A. JOHN P. MANCINI (*pro hac vice admitted*)
jmancini@mayerbrown.com
GINA M. PARLOVECCHIO
gparlovecchio@mayerbrown.com (*pro hac vice admitted*)
1221 Avenue of the Americas
New York, NY 10020-1001
Telephone:   (212) 506-2500

KRISTINE M. YOUNG (*pro hac vice admitted*)
kyoung@mayerbrown.com
71 S. Wacker Drive
Chicago, IL 60606
Telephone:   (312) 782-0600

SOPHIA M. MANCALL-BITEL (SBN 337002)
smancall-bitel@mayerbrown.com
333 South Grand Avenue, Suite 4700
Los Angeles, CA 90071
Telephone:   (213) 229-9500

*Attorneys for Defendants/Counterclaim Plaintiffs*
TikTok Ltd., TikTok USDS Joint Venture LLC, and
TikTok Inc.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TIKT LLC,<br><br>Plaintiff,<br><br>v.<br><br>TIKTOK LTD., TIKTOK USDS JOINT VENTURE LLC, TIKTOK INC., and DOES 1-10,<br><br>Defendants. | Case No. 2:26-cv-01210-AH-MAA<br><br>**ANSWER AND COUNTERCLAIMS BY TIKTOK LTD., TIKTOK USDS JOINT VENTURE LLC, AND TIKTOK INC.**<br><br>**JURY TRIAL DEMANDED** |
| TIKTOK LTD., TIKTOK USDS JOINT VENTURE LLC, and TIKTOK INC.,<br><br>Counterclaim Plaintiffs,<br><br>v.<br><br>TIKT LLC and TTOK LLC,<br><br>Counterclaim Defendants. | |

**ANSWER**

Defendants and Counterclaim Plaintiffs TikTok Ltd., TikTok USDS Joint Venture LLC, and TikTok Inc. (collectively, "TikTok") respond as follows to the Complaint for declaratory relief ("Complaint") of Plaintiff and Counterclaim Defendant Tikt LLC ("Tikt"):

**INTRODUCTION[1]**

1. TikTok is without sufficient knowledge or information to either admit or deny the allegations of this Paragraph and, therefore, denies the allegations.

2. TikTok admits that Tikt is the named applicant of TIKT (Serial No. 99/238,557) and that the application was filed on June 17, 2025, and that the application seeks to register TIKT in connection with "Software as a service (SAAS) services featuring software for format-shifting, downloading, and transferring image galleries and collections." TikTok is without sufficient knowledge or information to either admit or deny the remaining allegations of this Paragraph and, therefore, denies the same.

3. TikTok admits that it issued a cease-and-desist letter to Tikt on January 8, 2026, and that this Paragraph summarizes some of the points raised in the letter; specifically, the TIKT trademark infringes upon and dilutes TikTok's TIKTOK trademarks. TikTok also admits that the letter demands that Tikt stop all use of the TIKT trademark and withdraw the pending application. TikTok admits that an immediate, real, and justifiable controversy exists between TikTok and Tikt. TikTok is without sufficient knowledge or information to either admit or deny the remaining allegations of this Paragraph and, therefore, denies the same.

4. TikTok admits that this Paragraph summarizes the declaratory relief Tikt seeks from the Court.

---

[1] This Answer adopts the headings used in the Complaint for the convenience of the parties and the Court. No admission is intended by TikTok's use of the headings from the Complaint.

## PARTIES

5.    TikTok lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this Paragraph and, on that basis, denies them.

6.    TikTok admits that TikTok Ltd. is a limited company organized under the laws of the Cayman Islands, but clarifies that its registered address is Vistra (Cayman) Limited, P.O. Box 31119, Grand Pavilion, Hibiscus Way, 802 West Bay Road, Grand Cayman KY1-1205, Cayman Islands. TikTok further admits that TikTok Ltd. has a licensing agreement with TikTok Inc. for use of the TIKTOK trademark in commerce and clarifies that TikTok Inc. then sublicenses the TIKTOK trademark to TikTok USDS Joint Venture LLC for use in commerce. TikTok further admits that TikTok Inc. and TikTok USDS Joint Venture LLC are headquartered in this District and that TikTok USDS Joint Venture LLC operates the TikTok platform in the United States. Otherwise denied.

7.    Admitted but clarified that TikTok USDS Joint Venture LLC operates the TikTok platform in the United States.

8.    TikTok admits that TikTok Inc. is a corporation organized under the laws of California, with its principal place of business at 5800 Bristol Parkway, Suite 100, Culver City, California 90230. Otherwise denied.

9.    TikTok lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this Paragraph and, on that basis, denies them.

10.    TikTok lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this Paragraph and, on that basis, denies them.

## JURISDICTION AND VENUE

11.    TikTok admits that Tikt purports to bring this action pursuant to 15 U.S.C. § 1121 and 28 U.S.C. § 1338(a) and (b), and 28 U.S.C. §§ 2201-2202.

12.    TikTok admits that venue is proper for this specific lawsuit only pursuant to 28 U.S.C. § 1391 and that the stated principal place of business address

is correct as to TikTok Inc. and correct except for the suite number as to TikTok USDS Joint Venture LLC. Otherwise denied.

13.    TikTok admits that this Court has personal jurisdiction over TikTok Inc. and TikTok USDS Joint Venture LLC; that TikTok Inc. and TikTok USDS Joint Venture LLC are headquartered in this District; and that TikTok Inc. is incorporated in California. Otherwise denied. However, TikTok Ltd. consents to personal jurisdiction for this specific lawsuit only.

14.    Admitted.

## FACTS

15.    TikTok admits that the TIKT application claims a first use in commerce date of June 15, 2025 but TikTok is otherwise without sufficient knowledge or information to either admit or deny the allegations of this Paragraph.

16.    TikTok admits that Paragraph 16 describes the filing details of Application serial number 99238557 as reflected in the United States Patent and Trademark Office database that is publicly accessible.

17.    TikTok admits that the United States Patent and Trademark Office (USPTO) issued a Notice of Publication and the TIKT application was published for opposition on December 2, 2025. TikTok denies the remaining allegations of this Paragraph.

18.    Admitted.

19.    TikTok admits that the cease-and-desist letter it issued to Tikt on January 8, 2026, is attached as Exhibit 2 to the Complaint and that this Paragraph summarizes some of the points raised in the letter; specifically, the TIKT trademark infringes upon and dilutes TikTok's TIKTOK trademarks. TikTok also admits that the letter demands that Tikt stop all use of the TIKT trademark and withdraw the pending application. TikTok denies that the letter "wrongfully" accuses Tikt of trademark infringement and dilution.

20.    Denied.

- 4 -

21. Denied.

22. Denied.

23. Denied.

## COUNT I – DECLARATION OF NON-INFRINGEMENT OF TRADEMARK

24. TikTok incorporates each of its responses to Paragraphs 1 through 23 as if fully set forth here.

25. TikTok admits that an actual controversy exists between the parties. TikTok denies that Paragraph 25 completely or accurately describes the nature of the dispute between the parties or Tikt's services.

26. TikTok admits that Tikt requests judicial resolution for certainty. TikTok denies the remaining allegations of this Paragraph because Tikt uses and applied to register the TIKT mark in bad faith and with prior knowledge of TikTok's existing trademark rights at the time of filing the TIKT application.

27. TikTok admits that Tikt seeks judicial declaration but denies that such declaration is necessary for Tikt to determine its rights and duties under the Lanham Act or other applicable law and the facts of this case because Tikt uses and applied to register the TIKT mark in bad faith and with prior knowledge of TikTok's existing trademark rights at the time of filing the TIKT application.

## COUNT II – DECLARATION OF NON-DILUTION OF TRADEMARK

28. TikTok incorporates each of its responses to Paragraphs 1 through 27 as if fully set forth here.

29. TikTok admits that an actual controversy has arisen and exists between the parties. TikTok denies that Paragraph 29 completely or accurately describes the nature of the dispute between the parties or Tikt's services.

30. TikTok admits that Tikt requests judicial resolution for certainty. TikTok denies the remaining allegations of this Paragraph because Tikt uses and

- 5 -

applied to register the TIKT mark in bad faith and with prior knowledge of TikTok's existing trademark rights at the time of filing the TIKT application.

31. TikTok admits that Tikt seeks judicial declaration but denies that such declaration is necessary for Tikt to determine its rights and duties under the FTDA or other applicable law and the facts of this case because Tikt uses and applied to register the TIKT mark in bad faith and with prior knowledge of TikTok's existing trademark rights at the time of filing the TIKT application.

## COUNT III – DECLARATION OF NO UNFAIR COMPETITION

32. TikTok incorporates each of its responses to Paragraphs 1 through 31 as if fully set forth here.

33. TikTok admits that an actual controversy has arisen and exists between the parties. TikTok denies that Paragraph 33 completely or accurately describes the nature of the dispute between the parties or Tikt's services.

34. TikTok admits that Tikt requests judicial resolution for certainty. TikTok denies the remaining allegations of this Paragraph because Tikt uses and applied to register the TIKT mark in bad faith and with prior knowledge of TikTok's existing trademark rights at the time of filing the TIKT application.

35. TikTok admits that Tikt seeks judicial declaration but denies that such declaration is necessary for Tikt to determine its rights and duties under the Lanham Act or other applicable law and the facts of this case because Tikt uses and applied to register the TIKT mark in bad faith and with prior knowledge of TikTok's existing trademark rights at the time of filing the TIKT application.

## TIKT'S REQUEST FOR RELIEF

1. TikTok denies that Tikt is entitled to any of the relief requested in this Paragraph and further denies that Tikt is entitled to any relief or remedy whatsoever.

2. TikTok denies that Tikt is entitled to any of the relief requested in this Paragraph and further denies that Tikt is entitled to any relief or remedy whatsoever.

3.      TikTok denies that Tikt is entitled to any of the relief requested in this Paragraph and further denies that Tikt is entitled to any relief or remedy whatsoever.

4.      TikTok denies that Tikt is entitled to any of the relief requested in this Paragraph and further denies that Tikt is entitled to any relief or remedy whatsoever.

5.      TikTok denies that Tikt is entitled to any of the relief requested in this Paragraph and further denies that Tikt is entitled to any relief or remedy whatsoever.

## GENERAL DENIAL

1.      TikTok further denies each and every allegation in the Complaint that is not specifically admitted, denied, or otherwise responded to in this Answer.

## AFFIRMATIVE DEFENSES

1.      Without assuming any burden of proof that it would not otherwise bear under applicable law, and without limitation as to any and all other affirmative and additional defenses that it has, including those that subsequently may arise in this action, TikTok asserts the following affirmative or additional defenses to Tikt's claims:

## FIRST AFFIRMATIVE DEFENSE

### *(Priority)*

2.      Tikt's claims are barred because TikTok has prior and superior rights in the TIKTOK Trademark Family (defined as the marks shown in Paragraph 34 *infra*), having used the mark in commerce since at least as early as May 2017, long before Tikt's claimed first use date of June 15, 2025. TikTok's trademark registrations for TIK TOK (Reg. No. 5653614, registered January 15, 2019) and TIKTOK (Reg. No. 5981212, registered February 11, 2020) predate Tikt's claimed first use date by more than six years. The '614 and '212 trademark registrations are incontestable within the meaning of 15 U.S.C. § 1065 and are therefore conclusively valid. These registrations and TikTok's pervasive use of the TIKTOK Trademark Family provided actual and constructive notice to Tikt of TikTok's prior rights well before Tikt's adoption of the TIKT mark.

## SECOND AFFIRMATIVE DEFENSE

### *(Bad Faith)*

3.     Tikt's claims are barred by its bad faith adoption, use of, and application to register the TIKT mark with knowledge of TikTok's prior trademark rights and intent to benefit from the reputation and goodwill of the TIKTOK Trademark Family. Tikt's bad faith is conclusively established by the specimen of use that Tikt submitted to the USPTO with its trademark application, which explicitly states that Tikt's software is used to "download TikTok video, images, pins, GIF, Boards and TikTok profile content" and instructs users wanting to access Tikt's services to "just delete the 'ok' from tiktok.com so it becomes tikt.com, then press Enter to start the download." The specimen demonstrates that Tikt adopted the TIKT mark precisely because of its confusing similarity to the famous TIKTOK Trademark Family and that Tikt designed its services to trade on the goodwill associated with the TIKTOK Trademark Family.

## THIRD AFFIRMATIVE DEFENSE

### *(Unclean Hands)*

4.     Tikt's claims are barred by the doctrine of unclean hands based on Tikt's and its principal's, Johnathan Nader ("Nader"), pattern of trademark squatting and cybersquatting. Nader received a prior judgment against him for willful trademark counterfeiting, infringement, and cyberpiracy in *Inoreal v. Nutra Pure LLC, et al.*, Case No. 8:12-cv-1760-T-EAK-TGW (M.D. Fla. July 10, 2013). Nader has further engaged in a repeated pattern of filing trademark applications for marks that truncate or closely resemble famous global brands. The scale and scope of Nader's cybersquatting enterprise further demonstrates his unclean hands: on information and belief, Nader owns or controls more than 400 unique domains spanning over 20 top-level domains and targeting markets in at least 12 countries, including a cluster of 19 brand-adjacent domains directly relevant to this dispute and additional domains—such as googl.pe, youtubeshows.com, and

- 8 -

rollilngstone.com.ar—that are confusingly similar to other famous trademarks. Tikt's unclean hands are further evidenced by its fraud on the USPTO, wherein Nader signed sworn declarations falsely representing that no other person had the right to use marks in such near resemblance to TIKT as to be likely to cause confusion—a representation Nader knew to be false at the time it was made, given Nader's actual knowledge of TikTok's prior rights and Tikt's own specimen explicitly referencing TikTok and instructing users to manipulate TikTok's URL.

## FOURTH AFFIRMATIVE DEFENSE

*(Failure to State a Claim Upon Which Relief May be Granted)*

5.      Tikt's claims are barred because Tikt fails to allege facts upon which relief may be granted. Tikt cannot establish the absence of likelihood of confusion when: (a) the marks TIKT and TIKTOK are highly similar in appearance, sound, and commercial impression, with TIKT containing four of the six letters of TIKTOK in the same order; (b) the parties' services are directly related and complementary, with Tikt's software specifically designed to download content from TikTok's platform; and (c) the USPTO has already refused registration of the related TTOK mark based on likelihood of confusion with TikTok's prior registrations.

## FIFTH AFFIRMATIVE DEFENSE

*(No Damages)*

6.      Tikt's claims are barred because TikTok has not damaged Tikt or caused any injury in fact resulting in the loss of money or property. Rather, Tikt is intentionally infringing and capitalizing upon the fame and goodwill of the TIKTOK Trademark Family to TikTok's harm and detriment.

## RESERVATION OF RIGHTS

7.      TikTok reserves the right to amend this Answer to Tikt's Complaint and to add other affirmative defenses.

## COUNTERCLAIMS

Counterclaim Plaintiffs TikTok Ltd., TikTok USDS Joint Venture LLC, and TikTok Inc. (collectively, "TikTok"), upon personal knowledge as to their own acts and upon information and belief as to all others based on their own and their attorneys' investigation, allege their Counterclaims against TIKT LLC ("Tikt") and TTOK LLC ("Ttok") (collectively, "Counterclaim Defendants") as follows:

## I.    PRELIMINARY STATEMENT

1.    TikTok brings these counterclaims to protect one of the most recognizable brands of the digital age from a serial trademark infringer and cybersquatter who seeks to trade on TikTok's goodwill by using and seeking to register confusingly similar trademarks and domain names.

2.    Johnathan Nader ("Nader"), the principal, "Co-Founder," "Chief Executive Officer," and/or "Manager" of both Tikt and Ttok has engaged in a deliberate and systematic pattern of registering domain names and filing trademark applications for marks that truncate or closely resemble famous global brands through various entities owned by him, including INSTAG (Serial No. 99/473,061) and INSTAG.COM (Serial No. 99/003,998) (Instagram), FACEB (Serial No. 99/154,889) and FACEBO (Serial No. 99/267,345) (Facebook), SOUNDC (Serial No. 99/411,749) (SoundCloud), YOUT (Reg. No. 6272053) (YouTube), PINTERE (Serial No. 99/188,715) (Pinterest), XTWITT (Serial No. 99/323,050) (X/Twitter), and now TTOK and TIKT (TikTok). This is not coincidence—it is a calculated scheme to monetize through brand adjacency. Each of these LLCs was formed, each domain acquired, and each trademark application filed within a matter of months in 2025, reflecting a coordinated campaign to exploit the goodwill of the world's most recognized entertainment platforms.

3.    On information and belief, Nader owns or controls more than 400 unique domains spanning over 20 top-level domains and targeting markets in at least 12 countries, including the U.S., Mexico, Colombia, Peru, Chile, Argentina, Brazil,

- 10 -

India, Turkey, Taiwan, the Dominican Republic, and Venezuela. The brand-adjacent cluster includes not only the domains directly at issue in this litigation but also domains such as googl.pe (Google), youtubeshows.com (YouTube), and rollilngstone.com.ar (Rolling Stone) that truncate, mimic, or are confusingly similar to other famous trademarks. This portfolio operates through a centrally directed network of LLCs registered in Connecticut, all sharing the same registered agent and listing Nader as "Manager", including TIKT LLC, TTOK LLC, FACEB LLC, INSTAG LLC, PINTERE LLC, DOWNLOADER LLC, VPSORG LLC, YOUT LLC, DEBUGGER LLC, STOREMYCAR.COM LLC, and MUDDY HOLDINGS LLC. This operational structure allows Nader to stand up or abandon ventures quickly while limiting entity-level exposure.

4.    This is not Nader's first foray into trademark squatting and cybersquatting. In 2013, the United States District Court for the Middle District of Florida entered a default judgment of $325,000 against Nader for willful trademark counterfeiting, infringement, and cyberpiracy related to the SATIEREAL trademark, where Nader had registered multiple domain names incorporating the federally registered trademark without the owner's permission. Attached hereto as **Exhibit 1** is a true and correct copy of the court's unpublished decision granting default judgment in *Inoreal v. Nutra Pure LLC, et al.*, Case No. 8:12-cv-1760-T-EAK-TGW (M.D. Fla. July 10, 2013). On information and belief, this judgment remains unsatisfied, consistent with Nader's pattern of evading accountability for his unlawful conduct.

5.    On June 15, 2020, Nader's entity, Yout LLC ("Yout") applied for a registration for YOUT covering "Software as a service (SAAS) services featuring software for format-shifting" in Class 42 and claiming a first use anywhere in 2015. The mark registered on February 16, 2021. The specimen for the YOUT application was a screenshot of Nader's website yout.com.

6.    The concept of the YOUT mark was the same as that for the TIKT mark—remove some letters from the famous mark to ensure association between Yout and YouTube. For example, on a Reddit page from 10 years ago, Nader instructed users of the site to "simply delete the 'ube' out of any YouTube url to get to  the page where you can record it." Attached hereto as **Exhibit 2** is a true and correct copy of the Reddit post, also available at <https://www.reddit.com/r/IAmA/comments/4047sc/iam_john_nader_founder_of_youtcom_you_can_delete/>.

7.    Nader's pattern of bad faith conduct extends to multiple other pending trademark disputes where, like the TTOK and TIKT marks, Nader's marks simply remove letters of famous marks but retain enough of the registered marks to ensure an association with them. For example:

a.  Nader's entity, Faceb LLC ("Faceb"), filed applications for FACEB and FACEBO covering services identical to those applied for in the TIKT Application ("Software as a service (SAAS) services featuring software for format-shifting, downloading, and transferring image galleries and collections") on April 25, 2025, and July 3, 2025, respectively. On November 10, 2025, Meta Platforms, Inc. ("Meta"), the owner of registrations for FACEBOOK, sent a cease-and-desist letter to Faceb demanding that it stop use of confusingly similar marks. On December 19, 2025, Faceb filed a declaratory judgment action against Meta requesting declarations of non-infringement, non-dilution, and no unfair competition. On February 11, 2026, Meta filed a Consolidated Notice of Opposition (Opposition No. 91305142) against both FACEB and FACEBO claiming likelihood of confusion and dilution of a famous mark. On April 13, 2026, the opposition proceeding was suspended pending disposition of the declaratory

- 12 -

judgment suit. The litigation between Meta and Faceb is ongoing in the District of Connecticut (Case No. 3:25-cv-02129-VAB).

b. On January 16, 2025, Nader's entity, Instag LLC ("Instag"), filed an application for INSTAG.COM covering "software as a service (SAAS) services featuring software for changing one computer format to another, downloading, and transferring image galleries and collections for personal archiving and backup; not for hosting, publishing, or broadcasting user content" in Class 42. On July 9, 2025, the United States Patent and Trademark Office (USPTO) refused the application based on a likelihood of confusion with Instagram, LLC's ("Instagram") registered marks. On October 31, 2025, Instag filed an application for INSTAG covering services identical to those applied for in the TIKT Application ("Software as a service (SAAS) services featuring software for format-shifting, downloading, and transferring image galleries and collections"). The specimens for the INSTAG.COM and INSTAG applications were screenshots of Nader's website instag.com. On November 3, 2025, Instagram sent a cease-and-desist letter to Instag demanding that it stop use of confusingly similar marks. On December 30, 2025, Instag filed a declaratory judgment action against Instagram requesting declarations of non-infringement, non-dilution, and no unfair competition. On January 8, 2026, the USPTO issued a Final Office Action denying registration of INSTAG.com based on a likelihood of confusion with Instagram's registered marks. The litigation between Instagram and Instag is ongoing in the District of Connecticut (Case No. 3:25-cv-02176-KAD). Instag's complaint was filed only eleven days after Faceb filed its complaint against Meta, and less than two months before Tikt filed the present action, revealing a

coordinated litigation strategy of preemptively suing trademark owners to avoid enforcement.

c. On May 16, 2025, Nader's entity, Pintere LLC, filed an application for PINTERE covering services identical to those applied for in the TIKT Application ("Software as a service (SAAS) services featuring software for format-shifting, downloading, and transferring image galleries and collections"). The specimen for the PINTERE application was a screenshot of Nader's website pintere.com. On November 25, 2025, Pinterest, Inc., the owner of the registrations for PINTEREST and PIN, filed a Notice of Opposition (Opposition No. 91303335) against the application based on priority, likelihood of confusion, and dilution by blurring.

d. On August 8, 2025, Nader's entity, Downloader LLC, filed an application for XTWITT covering services identical to those applied for in the TIKT Application ("Software as a service (SAAS) services featuring software for format-shifting, downloading, and transferring image galleries and collections"). The specimen for the XTWITT application was a screenshot of Nader's website xtwitt.com. On January 12, 2026, the USPTO issued a Non-Final Office Action refusing registration based on a likelihood of confusion with the registered marks TWITTER and TWEET, both owned by X Corp.

e. On September 25, 2025, Nader's entity, Soundc LLC, filed an application for SOUNDC covering services identical to those applied for in the TIKT Application ("Software as a service (SAAS) services featuring software for format-shifting, downloading, and transferring image galleries and collections"). The specimen for the SOUNDC application was a screenshot of Nader's website soundc.com. On February 10, 2026, the USPTO issued a Non-Final Office Action

- 14 -

refusing registration because the specimen did not show the mark in use in commerce.

8.    The filing of numerous applications for trademarks confusingly similar to famous entertainment brands, mostly within a matter of months in 2025, combined with Nader's ownership of more than 400 unique domains spanning over 20 top-level domains and reaching markets in at least 12 countries, reflects a large scale, nefarious and coordinated campaign by Nader to exploit the goodwill of the world's most recognized entertainment brands, including TikTok.

9.    The USPTO has already recognized the confusingly similar nature of Nader's marks, including as specifically applied to TikTok and the TIKTOK Trademark Family (defined as the marks shown in Paragraph 34 *infra*). The application for TTOK was filed on May 22, 2025, and was signed by Nader as "Co-Founder" of TTOK LLC. On October 10, 2025, the USPTO issued a Non-Final Office Action refusing registration of Ttok's TTOK trademark application (Serial No. 99/197,884) based on likelihood of confusion with TikTok's prior TIK TOK, TIKTOK, TIKTOK stylized, and TIKTOK RADIO registrations.

10.    The application for TIKT was filed on June 17, 2025, and was signed by Nader as "Co-Founder" of TIKT LLC.[2] On December 31, 2025, TikTok requested and received from the Trademark Trial and Appeal Board (TTAB) a thirty-day extension of time in which to oppose Tikt's TIKT trademark application (Serial No. 99/238,557). On February 2, 2026, TikTok requested and received a further sixty-day extension of time to oppose registration of the TIKT application. TikTok timely filed its notice of opposition on April 1, 2026, and the opposition was instituted (Opposition No. 91306321). Tikt's deadline to answer TikTok's notice of opposition is May 31, 2026.

---

[2] A subsequent change of address filing for the TIKT Application identified Nader as the "Chief Executive Officer" of Tikt.

11.     To head off any confusion or reputational damage and stop Counterclaim Defendants' infringing use, TikTok issued a demand letter to Tikt on January 8, 2026. *See* Complaint, ECF No. 1, Ex. 2, pp. 20-22. Making no effort to resolve this matter amicably, Counterclaim Defendant TIKT LLC, as a junior user willfully encroaching on TikTok's rights, filed the present action for declaratory relief, evidencing unclean hands and bad faith. This litigation tactic mirrors Nader's pattern: when confronted with cease-and-desist letters, rather than cease and desist, Nader races to the courthouse to file preemptive declaratory judgment actions—as he did here, and as he did against Instagram and Meta just weeks earlier.

12.     TikTok brings these counterclaims to stop Counterclaim Defendants' infringement of TikTok's clearly established trademark rights in its TIKTOK Trademark Family, protect its brand identifiers, and prevent further irreparable harm to TikTok's business, reputation and goodwill. As set forth below, Counterclaim Defendants' infringing conduct is ongoing and accelerating, with over 6 million visits to their infringing websites in the past ten months, and TikTok is suffering irreparable harm for which monetary damages are inadequate. Without immediate injunctive relief, TikTok will continue to suffer loss of control over its brand, ongoing consumer confusion, and erosion of the goodwill it has built over years of investment in the TIKTOK Trademark Family.

## II.     THE PARTIES - COUNTERCLAIM DEFENDANTS

13.     Counterclaim Defendant TIKT LLC is, upon information and belief, a limited liability company formed on June 15, 2025, and organized under the laws of the State of Connecticut with its principal place of business at 122 Pine Knob Drive, South Windsor, CT 06074. Tikt is the owner of the U.S. trademark application for TIKT (Serial No. 99/238,557). On information and belief, Tikt is also the registrant of the domain <www.tikt.com>.

14.     Joined Counterclaim Defendant TTOK LLC is, upon information and belief, a limited liability company formed on May 18, 2025, and organized under

the laws of the State of Connecticut with its principal place of business at 122 Pine Knob Drive, South Windsor, CT 06074. Ttok is the owner of the U.S. trademark application for TTOK (Serial No. 99/197,884). On information and belief, Ttok is also the registrant of the domain <www.ttok.com>.

## III.    JURISDICTION AND VENUE

15.    This is a counterclaim action for trademark infringement in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); trademark dilution under Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c); violation of the Anti-Cybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d); determination that Counterclaim Defendants have no right to register TIKT or TTOK, 15 U.S.C. § 1119; and violations of state statutory and common law.

16.    This Court has subject matter jurisdiction over this matter pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338 in that it involves an action arising under the federal Lanham Act. This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

17.    Counterclaim Defendant Tikt has consented to the personal jurisdiction of this judicial district by bringing the present declaratory judgment action.

18.    This Court has personal jurisdiction over Counterclaim Defendant Ttok because it acts as an agent for, and in concert with, Counterclaim Defendant Tikt. Further, this action arises out of conduct by Ttok that has been expressly aimed at and regularly taking place in the State of California. Ttok's conduct aimed at and regularly taking place in the State of California also includes, but is not limited to, targeting and directing its goods and services to California residents through <www.ttok.com> and otherwise infringing TikTok's trademarks in the State of California. Counterclaim Defendant Ttok is knowingly and deliberately targeting and causing injury to the intellectual property rights of TikTok, which Ttok knows is based on California, and Ttok has knowingly and deliberately caused injury to the reputation and goodwill of TikTok among consumers in California.

19.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because, on information and belief, a substantial part of the events giving rise to this action occurred and continues to occur within this District.

20.     Venue is also proper because Counterclaim Defendant Tikt consented to this venue by bringing the present action for declaratory relief and because TikTok's counterclaims are permitted under Rule 13 of the Federal Rules of Civil Procedure.

## IV.     FACTS COMMON TO ALL COUNTERCLAIMS FOR RELIEF

### A.     The Famous TikTok Brand

21.     TikTok is a global technology company that owns a video-sharing entertainment platform under the TIKTOK Trademark Family.

22.     TikTok was launched in the U.S. in May 2017. The application allows users to create and share short videos, leveraging the smartphone camera and an intuitive editing interface to democratize video content creation. *See, e.g.*, **Figure 1**.



**Figure 1**

23.     Through significant investment of resources, the TIKTOK Trademark Family enjoys extraordinary recognition, goodwill, and fame among consumers. The TIKTOK mark and brand identity are instantly recognizable to hundreds of millions of consumers in the U.S. and billions worldwide. Synonymous with short-form

video content and viral internet trends in common parlance, the TIKTOK brand has become a cultural phenomenon with far-reaching influence across multiple industries.

24.     Since its launch, TikTok has surpassed 5.4 billion downloads and emerged as a dominant force, rivaling established entertainment platforms that have been in operation for over a decade. TikTok was the most downloaded application in the world in 2020, 2021, 2022, and 2024 (with over 773 million downloads in 2024 alone). TikTok has 1 billion users per day.

25.     In 2024, TikTok's U.S. revenue reached $10 billion. Independent third-party brand valuations have confirmed that the TIKTOK brand is worth approximately $154 billion, making it the sixth most valuable brand in the world, surpassing even Walmart, Samsung Group, Facebook, and other similarly famous brands.

26.     The TikTok mark and brand identity are instantly recognizable to hundreds of millions of consumers in the U.S. and billions worldwide. The platform's distinctive logo, featuring a stylized musical note design, and its name have achieved near-universal recognition among internet users.



27.     The USPTO has, on several occasions, recognized the TikTok Trademark Family and TikTok brand as well-known and famous in Office Actions refusing registration of confusingly similar third-party applications, *e.g.*, TIKTOK STUFF (Serial No. 90/401,064) and #FUTURECOPSOFTIKTOK (Serial No. 90/447,665).

28.    As third-party sources that study and aggregate marketing data have reported, the TIKTOK brand has attracted advertising revenue from virtually every major consumer brand and has become an essential component of marketing strategies across industries. TikTok's cultural cachet and massive reach have made it one of the most valuable digital properties in the world.

29.    TikTok currently boasts over one billion monthly active users spanning virtually every country and demographic. In the U.S. alone, the TikTok app reaches an estimated 170 million users, representing approximately 50% of the American population.

30.    The number of users of the TikTok app is so extraordinary that many users have gained significant personal followings to become famous in their own right, both on the app and in real life. The TikTok app has launched previously unknown musical artists to mainstream success and is influential in fashion, food, beauty, and entertainment trends.

31.    Recognition of the TIKTOK brand extends beyond its users to the general consuming public, as is evidenced by the fact that the app receives an abundance of unsolicited media coverage daily. The app has been the subject of countless articles in publications including *The New York Times*, *The Washington Post*, *The Wall Street Journal*, and *The Guardian*, among others.

32.    Because of this extraordinary fame, third-party use of even subtle variations of the TIKTOK Brand—such as TIKT or TTOK—is extremely likely to be perceived by consumers as emanating from, or at least endorsed by, TikTok and/or as short form for the TIKTOK Trademark Family.

**B.    TikTok's Intellectual Property**

33.    TikTok Ltd. is the current owner at the USPTO for the U.S. federal trademark registrations for TIKTOK family of marks identified in Paragraph 34 *infra* (together, the "TIKTOK Trademark Family").

- 20 -

34.    The TIKTOK Trademark Family includes the following U.S. federal trademark registrations:

| Trademark | Registration No. | Registration Date | International Class |
|---|---|---|---|
| TIK TOK | 5653614 | Jan. 15, 2019 | 9, 38, 41, 42 |
| TikTok | 5974902 | Feb. 04, 2020 | 9, 38, 41, 42 |
| TikTok | 5981213 | Feb. 11, 2020 | 9, 38, 41, 42 |
| TIKTOK | 5981212 | Feb. 11, 2020 | 9, 38, 41, 42 |
| TIKTOK | 6069518 | Jun. 02, 2020 | 45 |
| TikTok | 6847032 | Sep. 13, 2022 | 35 |
| TIKTOK | 7164330 | Sep. 12, 2023 | 16, 21, 24, 25 |
| TikTok | 7614045 | Dec. 17, 2024 | 9, 14 |
| TIKTOK RADIO | 7780318 | Apr. 29, 2025 | 38 |
| TIKTOK RADIO | 7780796 | Apr. 29, 2025 | 9, 35, 41, 42 |
| TIKTOK TAKO | 7886042 | Aug. 12, 2025 | 9, 42 |
| TikTok THE GREATEST GAMER | 7954285 | Sep. 23, 2025 | 38, 41 |
| TIKTOK MUSIC | 7989372 | Oct. 21, 2025 | 9, 38, 41, 42, 45 |
| TIKTOK NOTES | 8027129 | Nov. 18, 2025 | 9, 35, 38, 41, 42, 45 |
| TIKTOK Q | 8036534 | Nov. 25, 2025 | 9, 35, 42 |
| TIKTOK NOW | 8064468 | Dec. 16, 2025 | 9, 38, 41, 42, 45 |
| TIKTOK PAYLATER | 8132326 | Feb. 10, 2026 | 9, 36, 42 |

| Trademark | Registration No. | Registration Date | International Class |
|---|---|---|---|
| TIKTOK PRO | 8132372 | Feb. 10, 2026 | 9, 35, 38, 41, 42, 45 |
| TIKTOK GLOW | 8132373 | Feb. 10, 2026 | 9, 35, 38, 41, 42, 45 |

35.    Attached hereto as **Exhibit 3** are true and correct copies of the U.S. registration certificates for the TIKTOK Trademark Family.

36.    Registration on the Principal Trademark Register is prima facie evidence of the validity of the TIKTOK Trademark Family, TikTok's ownership of the TIKTOK Trademark Family, and TikTok's exclusive right to use the TIKTOK Trademark Family in connection with the goods and services specified in the registrations.

37.    Additionally, four registrations—Registration Nos. 5653614, 5981213 (Section 15 filed), 5981212, and 6069518—have become incontestable pursuant to Section 15 of the Lanham Act, 15 U.S.C. § 1065, and thus are conclusive evidence of the validity of each mark and TikTok's ownership of and exclusive rights to use the marks in connection with the goods and services identified in the registrations.

38.    The TIKTOK Trademark Family is inherently distinctive and has also acquired distinctiveness and extraordinary commercial strength in the U.S. through TikTok's exclusive and continuous use in commerce since 2017, substantial marketing and promotional efforts, and an extensive user base comprising over 170 million active users in the U.S. alone.

39.    The TIKTOK Trademark Family registrations provide TikTok with the right to exclude third parties from using confusingly similar branding in connection with similar goods and services.

40.    "TikTok" is a household name that is truly prominent and renowned amongst the general consuming public. As such, TikTok is afforded broad protections to enforce its famous TIKTOK Trademark Family against infringing third-party uses, including uses in connection with unrelated goods and services.

41.    When made aware of infringing third-party uses, TikTok vigorously protects the TIKTOK Trademark Family and has a proven track record of successful enforcement actions, including numerous opposition proceedings at the TTAB resulting in abandonment of the infringing application(s).

### C.    Counterclaim Defendants' Unlawful Activities

#### 1.    Bad Faith Applications to Register TIKT and TTOK

42.    Counterclaim Defendants had actual and constructive knowledge of TikTok's superior and famous rights in and to the TIKTOK Trademark Family prior to Counterclaim Defendants' adoption of the infringing TIKT and TTOK trademarks, and Counterclaim Defendants continue to use the infringing TIKT and TTOK trademarks with actual knowledge of their infringing conduct.

43.    On June 17, 2025, Counterclaim Defendant TIKT LLC filed U.S. Trademark Application Serial No. 99/238,557 for TIKT, covering "Software as a service (SAAS) services featuring software for format-shifting, downloading, and transferring image galleries and collections" in International Class 42 (the "TIKT Application"). The TIKT Application claims a first use in commerce date of June 15, 2025. Attached hereto as **Exhibit 4** is a true and correct copy of the trademark application record for the TIKT Application from the USPTO Trademark Status & Document Retrieval website.

44.    The TIKT Application was published on December 2, 2025. On December 31, 2025, TikTok requested and received a thirty-day extension of time in which to oppose the TIKT Application. On February 2, 2026, TikTok requested and received a further sixty-day extension of time to oppose registration of the TIKT Application. TikTok timely opposed the TIKT Application on April 1, 2026, in order to preserve its rights during the pendency of this action. Tikt's deadline to answer the notice of opposition is May 31, 2026.

45.    On May 22, 2025, Counterclaim Defendant TTOK LLC filed U.S. Trademark Application Serial No. 99/197,884 for TTOK, covering "Software as a

- 23 -

service (SAAS) services featuring software for format-shifting, downloading, and transferring image galleries and collections" in International Class 42 (the "TTOK Application"). The TTOK Application claims a first use in commerce date of May 21, 2025. Attached hereto as **Exhibit 5** is a true and correct copy of the trademark application record for the TTOK Application from the USPTO Trademark Status & Document Retrieval website.

46.    On October 10, 2025, the USPTO issued a Non-Final Office Action refusing registration of the TTOK Application under Section 2(d) based on a likelihood of confusion with TikTok's prior valid trademark registrations for TIK TOK (Reg. No. 5653614), TIK TOK stylized (Reg. No. 5974902), TIKTOK (Reg. No. 5981212), TIKTOK stylized (Reg. No. 5981213), and TIKTOK RADIO (Reg. No. 7780796). *See* **Ex. 5**, pp. 33-130.

| Trademark | Reg. No. | Reg. Date | Cited Goods |
|---|---|---|---|
| TIK TOK | 5653614 | Jan. 15, 2019 | **Class 9:** downloadable software for creating, producing, editing, manipulating, transmitting, uploading, downloading, and sharing electronic media, multimedia content, videos, movies, pictures, images, text, photos, user-generated content, audio content, and information via the Internet and other communications networks |
| TikTok | 5974902 | Feb. 04, 2020 | **Class 9:** downloadable software for creating, producing, editing, manipulating, transmitting, uploading, downloading, and sharing electronic media, multimedia content, videos, movies, pictures, images, text, photos, user-generated content, audio content, and information via the Internet and other communications networks |
| TIKTOK | 5981212 | Feb. 11, 2020 | **Class 9:**  downloadable software for creating, producing, editing, manipulating, transmitting, uploading, downloading, and sharing electronic media, multimedia content, videos, movies, pictures, images, text, photos, user-generated content, audio content, and information via the Internet and other communications networks |
| TikTok | 5981213 | Feb. 11, 2020 | **Class 9:** downloadable software for creating, producing, editing, manipulating, |

- 24 -

| Trademark | Reg. No. | Reg. Date | Cited Goods |
|---|---|---|---|
| | | | transmitting, uploading, downloading, and sharing electronic media, multimedia content, videos, movies, pictures, images, text, photos, user-generated content, audio content, and information via the Internet and other communications networks |
| TIKTOK RADIO | 7780796 | Apr. 29, 2025 | **Class 9:** downloadable mobile applications for mobile phones, televisions, and tablet computers allowing users to purchase, play, share and download music, songs, albums, lyrics and quotes and create, recommend, and share his/her playlists, lyrics and quotes, take, edit and upload photographs as the cover of playlists, comment on music, songs, and albums; downloadable mobile applications for mobile phones, televisions, and tablet computers allowing users to manage and share digital content, namely, music, photographs, videos |

47. As the basis for refusal of the TTOK Application, the Examining Attorney wrote as to the similar appearance of the marks:

> TTOK, and the marks in Registration Nos. 5653614, TIK TOK, 5974902, TIK TOK, 5981212 TIKTOK, 5981213, TIKTOK, and 7780796, TIKTOK RADIO, are highly similar in appearance, sound, and commercial impression. Specifically, the marks all contain the highly similar wording T[IK]TOK, wherein the first letter is a T and the ending is TOK. As such, the applied-for mark, TTOK will give the commercial impression of being shorthand for TIK TOK.

**Ex. 5**, p. 36.

48. As to the overlapping nature of the goods and services that likewise warranted refusal of the TTOK Application, the Examining Attorney wrote:

> the applicant's "software for format-shifting, downloading, and transferring image galleries and collections," are related to the registrant's "software for creating, producing, editing, manipulating, transmitting, uploading, downloading, and sharing electronic media, multimedia content, videos, movies, pictures, images, text, photos, user-generated content, audio content, and information via the Internet and other communications networks." Specifically, both entities provide software for downloading images, the only difference being one provides such software in downloadable form and the other in SAAS form. *Moreover, the applicant's own specimen explicitly references that the applicant's software is for direct use in connection with the*

- 25 -

*registrant's software. Specifically, applicant's specimen indicates that it is used to "download TikTok video, images, pins, GIF, Boards and TikTok profile content." In fact, the applicant even indicates that to capture such images of the registrant's software you must "Go to a TikTok.com URL and remove ik from the URL..."* This evidence establishes that the applicant's and registrant's software are similar or complementary in terms of purpose or function. Thus, applicant's and registrant's software are considered related for likelihood of confusion purposes.

*Id.* at p. 37 (emphasis added). *See, e.g.*, **Figure 2**.



**Figure 2**

49. Ttok responded to the Non-Final Office Action on April 1, 2026. On April 2, 2026, the USPTO issued a Suspension Notice, continuing and maintaining the Section 2(d) Refusal and emphasizing, while also attaching significant evidence of, the fame of the TIKTOK mark. The Examining Attorney wrote:

Moreover, although not required in ex parte proceedings, attached evidence clearly establishes the fame of the registered mark, with over 135 million U.S. users, and almost 2 billion users worldwide…

- 26 -

> Applicant's specimen clearly indicates that applicant derived the mark directly from the highly famous registered mark, merely removing two letters, and also establishes that applicant's software is explicitly is [sic] intended to download and transfer images directly from the registrant's software. Such evidence shows egregious likelihood of confusion that boarders [sic] on the line of deception.

*Id.* at p. 10.

50.    Counterclaim Defendants not only infringe the TIKTOK Trademark Family, but they do so willfully, deliberately, and with full knowledge of TikTok's superior rights. After the USPTO squarely rejected the TTOK Application based on a likelihood of confusion with TikTok's prior registered rights, Counterclaim Defendants brazenly proceeded to use the infringing TIKT and TTOK trademarks anyway and file the Complaint for declaratory judgment of non-infringement—in flagrant disregard of federal trademark law and with full awareness of the risk that their continued use would invite trademark infringement counterclaims from TikTok.

51.    Counterclaim Defendants' unauthorized use of the infringing TIKT and TTOK trademarks in connection with image and video ripping services constitutes a gross loss of control over TikTok's reputation and goodwill because TikTok may be understood by the consuming public as having endorsed, approved of, authorized, affiliated itself with, or sponsored Counterclaim Defendants' services. The loss of control over its goodwill and reputation is irreparable.

52.    The harm to TikTok is ongoing, continuous, and accelerating. On information and belief, there have been more than 350,000 visits to TIKT.com since June 2025 and more than 5.725 million visits to TTOK.com since May 2025, a combined total exceeding 6 million visits in approximately ten months. Each visit represents a potential instance of consumer confusion and an opportunity for unauthorized downloading of copyrighted content from TikTok's platform. Absent injunctive relief, this harm will continue and intensify as Counterclaim Defendants expand their operations.

53.    TikTok's harm cannot be adequately compensated by monetary damages alone. The intangible harm to TikTok's reputation, brand identity, and consumer goodwill is inherently difficult to quantify. Moreover, Nader resides outside the U.S. and has a documented history of failing to satisfy judgments, including the $325,000 default judgment entered against him in 2013 that, on information and belief, remains unsatisfied. Any monetary judgment in this case may prove uncollectible, making injunctive relief essential to protect TikTok's interests.

### 2.    Fraud on the USPTO

54.    In connection with the TIKT Application and the TTOK Application, Counterclaim Defendants made material misrepresentations to the USPTO with the intent to deceive the USPTO into granting federal trademark registrations to which Counterclaim Defendants knew they were not entitled.

55.    On May 22, 2025, in connection with the filing of the TTOK Application, Nader, as representative of Counterclaim Defendant TTOK LLC, signed and submitted to the USPTO a sworn declaration. On June 17, 2025, in connection with the filing of the TIKT Application, Nader, as representative of Counterclaim Defendant TIKT LLC, signed and submitted to the USPTO a sworn declaration. Each sworn declaration stated, in pertinent part:

> To the best of the signatory's knowledge and belief, no other persons, except, if applicable, concurrent users, have the right to use the mark in commerce, either in the identical form or in such near resemblance as to be likely, when used on or in connection with the goods/services of such other persons, to cause confusion or mistake, or to deceive.

**Ex. 5**, pp. 200-201 (TTOK); **Ex. 4**, pp. 27-28 (TIKT).

56.    These sworn declarations were false when made. Specifically, the declarations falsely represented that, to the best of the signatories' knowledge and belief, no other persons had the right to use marks in such near resemblance to TIKT and TTOK as to be likely to cause confusion. This representation was false because, at the time the TTOK Application was filed on May 22, 2025, and at the time the

- 28 -

TIKT Application was filed on June 17, 2025, Counterclaim Defendants actually knew that TikTok had prior rights in and to the TIKTOK Trademark Family and that the TIKT and TTOK marks so nearly resembled TikTok's trademarks as to be likely to cause confusion, mistake, or deception when used in connection with Counterclaim Defendants' goods and services.

57.    Counterclaim Defendants' knowledge of TikTok's superior rights and the confusingly similar nature of the TIKT and TTOK marks is conclusively established by the specimens of use that Counterclaim Defendants themselves submitted to the USPTO with their applications. The specimen submitted with the TTOK Application explicitly states that Counterclaim Defendant Ttok's software is used to "download TikTok video, images, pins, GIF, Boards and TikTok profile content." The specimen further instructs users to "Go to a TikTok.com URL and remove ik from the URL" to access Counterclaim Defendants' services. *See, e.g.*, **Figure 2** *supra*. Similarly, the specimen submitted with the TIKT Application explicitly states that Counterclaim Defendant Tikt's software is used to "download TikTok video, images, pins, GIF, Boards and TikTok profile content," and likewise instructs users to "Go to a TikTok.com URL and remove ok from the URL" to access Counterclaim Defendants' services. *See, e.g.*, **Figure 3**.



**Figure 3**

58.    Counterclaim Defendants' own specimens thus demonstrate that Counterclaim Defendants adopted the TIKT and TTOK marks precisely because of their confusing similarity to TikTok's famous TIKTOK Trademark Family, and that Counterclaim Defendants designed their services to trade on the goodwill associated with TikTok's trademarks by instructing users to manipulate TikTok's URL to reach Counterclaim Defendants' infringing services. Counterclaim Defendants could not have truthfully sworn that no other person had the right to use a mark in such near resemblance as to be likely to cause confusion when their entire business model was predicated on consumer confusion between their marks and TikTok's famous TIKTOK marks.

59. Counterclaim Defendants clearly knew that their sworn declarations were false at the time they were made. TikTok's trademark registrations for TIK TOK (Reg. No. 5653614, registered January 15, 2019), TIK TOK stylized (Reg. No. 5974902, registered February 4, 2020), TIKTOK (Reg. No. 5981212, registered February 11, 2020), and TIKTOK stylized (Reg. No. 5981213, registered February 11, 2020) predate Counterclaim Defendants' claimed dates of first use in commerce by more than five years. These registrations were publicly available in the USPTO's records and provided actual and constructive notice to Counterclaim Defendants of TikTok's prior rights. Counterclaim Defendants deliberately selected marks that closely resembled TIKTOK—namely, by removing the letters "IK" from TIKTOK to create TTOK, and by removing the letters "OK" from TIKTOK to create TIKT— for the express purpose of trading on the fame and goodwill of TikTok's marks. This deliberate adoption of confusingly similar marks, combined with Counterclaim Defendants' explicit instructions to consumers to manipulate TikTok's URLs, demonstrates that Counterclaim Defendants knew their sworn declarations were false when made.

60. Nader, through his associated entities, habitually defrauds the USPTO by knowingly and intentionally filing trademark applications infringing upon the registered, famous trademarks of other tech companies, including Instagram (INSTAG (Serial No. 99/473,061) and INSTAG.COM (Serial No. 99/003,998)) and Facebook (FACEB (Serial No. 99/154,889) and FACEBO (Serial No. 99/267,345)). The specimens for INSTAG, INSTAG.COM, FACEB and FACEBO also specifically reference Instagram ("Download Instagram Video, Reels, Photo, IGTV, and carousels"), or Facebook ("Download Facebook Video, Reels, Photo, Watch, and carousels").

61. Counterclaim Defendants also filed their respective applications on a Section 1(a) use in commerce basis, despite the fact that Counterclaim Defendants were not legitimately using the TIKT and TTOK marks as trademarks to indicate

the source of their services. Counterclaim Defendants' lack of legitimate use is demonstrated by the totality of circumstances, including: (a) the formation of Counterclaim Defendants within a handful of days of their respective trademark applications being filed, with no evidence of any prior business activity for either entity; (b) Counterclaim Defendants claimed first use in commerce dates for their respective applied-for marks falling either on or within a few days of the Counterclaim Defendants' formation, suggesting rushed filings rather than the organic development of brands, and rendering any claimed uses sham transactions insufficient to constitute bona fide use in commerce; (c) Nader's contemporaneous formation of multiple LLCs and filing of applications for marks that truncate other famous brands, evidencing a pattern of filing applications solely to leverage the goodwill of established marks rather than to identify a legitimate source of goods or services; (d) the absence of any documentary evidence that Counterclaim Defendants had developed business plans, marketing strategies, or independent brand identities separate from its parasitic relationship to the TIKTOK brand; and (e) the nature of Counterclaim Defendants' services, which are designed exclusively to interface with and extract content from the TikTok App, making the marks functionally dependent on the TIKTOK Trademark Family rather than serving as independent source identifiers. Counterclaim Defendants knowingly and intentionally made these false sworn declarations and false representations of legitimate use with the intent to induce the USPTO to rely upon them in granting federal trademark registrations for TIKT and TTOK. The sworn declaration regarding knowledge of confusingly similar marks and the primary filing basis for trademark applications are material elements of any trademark application, and Counterclaim Defendants knew that the USPTO would rely upon these declarations and false representations in evaluating the applications.

62. The USPTO reasonably relied upon Counterclaim Defendants' false sworn declarations and false representations of legitimate use. The TIKT

- 32 -

Application was published for opposition on December 2, 2025, and may have proceeded to registration absent TikTok's opposition. As for the TTOK Application, although the USPTO issued a Non-Final Office Action and a subsequent Suspension Letter refusing registration based on likelihood of confusion, the USPTO initially relied upon Counterclaim Defendant Ttok's false sworn declaration and representation of current use in commerce in processing the application.

63.     TikTok has been damaged as a result of Counterclaim Defendants' fraud on the USPTO. TikTok has been forced to expend significant resources monitoring Counterclaim Defendants' applications, preparing a notice of opposition against the TIKT Application that was timely filed before the April 1, 2026 deadline, and defending against Counterclaim Defendants' bad faith declaratory judgment action in this Court. TikTok has also suffered harm to its goodwill and reputation as a result of Counterclaim Defendants' attempt to register confusingly similar marks with the USPTO.

**3.     Registration and Operation of Infringing Domains and Websites**

64.     Counterclaim Defendants registered, trafficked in, and used domain names that are confusingly similar to TikTok's protected TIKTOK Trademark Family with bad faith intent to profit from those marks.

65.     On information and belief, Nader is a domain name squatter and considers himself to be involved in the "internet game" of the "art of domains, also known as domaining." Nader has publicly written that he "like[s] domains" and has "enjoyed [domaining] since I got into the internet game." He has also acknowledged that "domaining gets a bad rap," which is a tacit admission that his conduct is of the type that invites legal scrutiny.

66.     On information and belief, the domain name TIKT.com was originally registered on May 18, 2002. Prior to Counterclaim Defendants' acquisition, the domain was parked and available for purchase. Captures retrieved from The

- 33 -

Wayback Machine dated July 25, 2023, show the TIKT.com domain as parked and available for purchase. *See, e.g.*, **Figure 4**.



**Figure 4**

67. On information and belief, Counterclaim Defendant Tikt purchased the TIKT.com domain on or about June 14, 2025. The registrant information for the TIKT.com domain was, on information and belief, updated to reflect the new owner on June 14, 2025.

68. The next available capture from The Wayback Machine, dated June 15, 2025, shows the infringing website and content as fully operational. *See, e.g.*, **Figure 5**.



**Figure 5**

69.    On information and belief, the domain name TTOK.com was originally registered on May 22, 2007. Prior to Counterclaim Defendants' acquisition, the domain was parked and available for purchase. Captures retrieved from The Wayback Machine dated March 5, 2025, show the TTOK.com domain listed for sale for $9,875 USD. *See, e.g.*, **Figure 6**.



**Figure 6**

TIKTOK'S ANSWER AND COUNTERCLAIMS; CASE NO. 2:26-CV-01210-AH-MAA

70.     On information and belief, Counterclaim Defendant Ttok purchased the TTOK.com domain on or about May 21, 2025. The registrant information for the TTOK.com domain was, on information and belief, updated to reflect the new owner on May 31, 2025.

71.     The next available capture from The Wayback Machine, dated May 22, 2025, shows the infringing website and content as fully operational. *See, e.g.*, **Figure 7**. The speed with which Counterclaim Defendants launched the TIKT.com website, within one day of acquiring the domain, demonstrates that this was a premeditated scheme, not a legitimate business endeavor.



**Figure 7**

72.     The TTOK.com and TIKT.com domain names are confusingly similar to TikTok's protected marks, including the federally registered trademarks for TIK TOK (Reg. Nos. 5653614 and 5974902), TIKTOK (Reg. Nos. 5981212 and 5981213), and TIKTOK RADIO (Reg. No. 7780796). The domain names TTOK.com and TIKT.com are derived directly from TIKTOK by removing two letters—"IK" to create TTOK and "OK" to create TIKT. As the USPTO Examining

Attorney found in refusing registration of the TTOK Application, "the marks all contain the highly similar wording T[IK]TOK, wherein the first letter is a T and the ending is TOK," and "the applied-for mark, TTOK will give the commercial impression of being shorthand for TIK TOK." *See* **Ex. 5**, p. 36.

73. Counterclaim Defendants' cybersquatting and infringing conduct is ongoing and shows no signs of abating. Despite receiving TikTok's cease-and-desist letter on January 8, 2026, and despite the USPTO's continued refusal to register the TTOK mark based on likelihood of confusion with TikTok's marks, Counterclaim Defendants continue to operate the TIKT.com and TTOK.com websites, continue to use the infringing TIKT and TTOK marks, and continue to offer their video-ripping services that circumvent TikTok's technological protection measures. Counterclaim Defendants' response to TikTok's enforcement efforts was not to cease infringing, but to file this preemptive lawsuit, demonstrating their intent to continue their unlawful conduct indefinitely.

74. Counterclaim Defendants' pattern of conduct, including Nader's prior cyberpiracy judgment and his simultaneous targeting of multiple major social media and entertainment platforms, demonstrates a calculated disregard for intellectual property rights and a willingness to continue infringing conduct despite legal consequences. This pattern strongly supports the need for immediate injunctive relief to halt the ongoing harm to TikTok.

75. Counterclaim Defendants registered and used TTOK.com and TIKT.com domain names with bad faith intent to profit from TikTok's famous TIKTOK marks. This bad faith intent is demonstrated by, among other things, the following:

    a. Counterclaim Defendants had actual knowledge of TikTok's rights in the TIKTOK Trademark Family at the time they acquired the TTOK.com and TIKT.com domains. TikTok's TIKTOK marks are famous worldwide and have been in continuous use since at least 2017.

TikTok's trademark registrations predate Counterclaim Defendants' acquisition of the domains by more than five years and provided constructive notice of TikTok's rights.

b. Counterclaim Defendants selected the TTOK.com and TIKT.com domain names precisely because of their similarity to TikTok's marks and with the intent to divert consumers seeking TikTok's services. Counterclaim Defendants' own websites instruct users to "Go to a TikTok.com URL and remove ik from the URL" to access Counterclaim Defendants' services—a clear admission that Counterclaim Defendants designed their domain names to capitalize on consumer confusion with TikTok's domain and marks.

c. The video-ripping services made available through TTOK.com and TIKT.com are intended to enable downloading videos and images from TikTok, without any request for authorization from TikTok or the original content creator(s), and without being subjected to security, identity, and/or privacy verification. Given the fame of the TIKTOK Trademark Family, there is a significant risk that consumers will confuse the parties and mistakenly believe that TikTok endorses or is otherwise affiliated with Counterclaim Defendants, despite no such relationship.

d. Counterclaim Defendants have no legitimate noncommercial or fair use rights in the TTOK and TIKT names. Counterclaim Defendants adopted these names solely to trade on the goodwill of TikTok's famous marks by offering software services that directly interact with and depend upon TikTok's platform.

e. Counterclaim Defendants' intent to profit from TikTok's marks is further evidenced by the commercial nature of Counterclaim Defendants' websites, which offer software services in exchange for

TIKTOK'S ANSWER AND COUNTERCLAIMS; CASE NO. 2:26-CV-01210-AH-MAA

payment and generate revenue by exploiting consumer association with TikTok's brand. Counterclaim Defendants charge users an annual fee of $107.91 USD in exchange for services including, but not limited to, bulk and unrestricted downloads from TikTok, download of multiple URLs at once from TikTok, and clipping of videos and audio from TikTok. A 24 hour "day pass" to use Counterclaim Defendants' image and video ripping services on TIKT.com and TTOK.com costs $7.99 USD.

f. On information and belief, there have been more than 350,000 visits to TIKT.com since June 2025, and more than 5.725 million visits to TTOK.com since May 2025. To provide context for the magnitude of Counterclaim Defendants' infringement, if each visit to TIKT.com and TTOK.com resulted in the visitor purchasing an annual membership to use Counterclaim Defendants' image and video ripping services, Counterclaim Defendants could have received over $655 million USD in income in the last 10 months by trading on TikTok's brand name and goodwill. If each visitor only purchased a "day pass" that is still over $48 million USD in income generated by Counterclaim Defendants' infringing activities.

g. Counterclaim Defendants provided materially false information to the USPTO in connection with their trademark applications, as set forth in Paragraphs 54-63 *supra*, further demonstrating their bad faith intent.

h. Nader's pattern of registering domain names that truncate famous trademarks—including YOUT.com (YouTube), INSTAG.com (Instagram), FACEB.com (Facebook), PINTERE.com (Pinterest), SOUNDC.com (SoundCloud), and XTWITT.com (X/Twitter)— provides overwhelming evidence of a systematic scheme to trade on

- 39 -

the goodwill of famous brands. This is not the conduct of a legitimate entrepreneur; it is the conduct of a serial cybersquatter.

i. On information and belief, Nader operates through a centrally directed network of LLCs, all registered in Connecticut with the same registered agent—Ross S. Gionfriddo—at his personal residence in South Windsor, Connecticut. This structure includes TIKT LLC, TTOK LLC, FACEB LLC, INSTAG LLC, PINTERE LLC, DOWNLOADER LLC, VPSORG LLC, YOUT LLC, and MUDDY HOLDINGS LLC. This modular approach allows Nader to stand up or abandon ventures quickly while limiting entity-level exposure, a structure optimized for evading accountability while maximizing the ability to trade on the goodwill of famous marks.

j. Nader has been previously adjudicated liable for cyberpiracy, having defaulted on a $325,000 judgment for willful trademark counterfeiting, infringement, and cyberpiracy in 2013. The present conduct is a continuation of the same unlawful pattern.

76. Nader has publicly acknowledged his interest in domain names from a market value and monetization perspective. In a blog post dated May 11, 2025, just weeks before Counterclaim Defendants formed TTOK LLC and filed the TTOK Application, Nader wrote: "A domain is only as much as it's worth. Or better put, it's only worth as much as someone thinks they can make out of it. Also vanity. Vanity is probably a huge part of it too." In the same post, Nader acknowledged that "domaining gets a bad rap," but defended the practice because he "develop[s]" his domains. Attached as **Exhibit 6** is a true and correct copy of Nader's blog post dated May 11, 2025, available at <https://johnathannader.com/domain-development/>.

77. In another blog post dated April 23, 2025, Nader expressed optimism about the future appreciation of domain names, stating "the art of domaining lives on. Maybe not as blockbuster, yet. But it'll get there I think." Attached as **Exhibit 7**

is a true and correct copy of Nader's blog post dated April 23, 2025, available at <https://johnathannader.com/domaining/>. These statements, made contemporaneously with Counterclaim Defendants' acquisition of the TTOK.com and TIKT.com domains, demonstrate that Nader selected these domain names with full awareness of their market value—value derived entirely from their confusing similarity to TikTok's famous marks.

78. Nader has endorsed registering domains that are identical or nearly identical to popular search terms as "the best way to enter any niche" and has described a deliberate strategy of consolidating traffic from multiple such domains into a single site—a practice directly relevant to showing willful intent to divert traffic from legitimate mark holders. Attached as **Exhibit 8** is a true and correct copy of Nader's blog post dated January 12, 2021, available at <https://johnathannader.com/exact-match-domain-vs-brand-domain/>.

79. On information and belief, Nader, or entities owned by Nader, currently own more than 400 separate domains. Some of the domains were clearly purchased for cybersquatting purposes, such as: googl.pe, youtubeshows.com and rollilngstone.com.ar. The scale of this portfolio, combined with Nader's repeated acquisition of multiple TLD variants, concentration in search-driven niches, and frequent use of domain parking and brokerage platforms such as Sedo, Afternic, ParkingCrew, and Dan.com, strongly supports the conclusion that Nader operated as a professional domain investor and traffic monetizer, not a casual registrant. The shared registration, hosting, parking, and attribution signals materially strengthen the argument that these domains were controlled as part of a unified commercial portfolio designed to trade on the goodwill of famous marks. Nader is the true definition of a domain squatter, and his conduct forecloses any argument that registration of domains bearing the TIKTOK Trademark Family and use of TikTok's trademarks was innocent or coincidental.

80.    Nader's deliberate bad faith is further evidenced by his own public statements regarding his domain acquisition and search engine optimization strategies. In blog posts on his personal website, johnathannader.com, Nader has made highly probative admissions, including:

    a. In a blog post titled "Exact Match Domain vs. Brand Domain" dated January 12, 2021, Nader endorses exact-match domains as "the best way to enter any niche" and describes a strategy of redirecting multiple EMD sites into a unified brand to consolidate ranking signals and traffic—a tactic directly relevant to his scheme of diverting traffic from legitimate trademark holders. *See id.*

    b. In a blog post titled "SEO 102" dated March 6, 2021, Nader advocates for the secret rapid scaling of bad-faith tactics until they stop working, writing: "Scale as fast as you can before it doesn't work anymore … Don't show it to anybody." This demonstrates knowledge of aggressive, short-half-life techniques designed to exploit search algorithms before detection. Attached as **Exhibit 9** is a true and correct copy of Nader's blog post dated March 6, 2021, available at <https://johnathannader.com/seo-102/>.

    c. In a blog post dated January 19, 2022, Nader details acquiring and operating multiple conversion sites under .to domains (including PDF.to, Word.to, JPEG.to, MP3.to, MP4.to, PNG.to, EPUB.to, WEBM.to, WEBP.to, and MKV.to), with development notes and monetization hints, evidencing the scale and portfolio-level nature of his operations. Attached hereto as **Exhibit 10** is a true and correct copy of Nader's blog post dated January 19, 2022, available at <https://johnathannader.com/january-19th-2022/>.

81.    These statements establish that Nader possesses sophisticated knowledge of SEO tactics, deliberately engages in domain clustering and traffic

consolidation strategies, and intentionally operates with secrecy to avoid detection—all of which support the conclusion that his registration and use of domains confusingly similar to TikTok's marks was deliberate, willful, and in bad faith.

82. As a result of Counterclaim Defendants' cybersquatting, TikTok has suffered and continues to suffer damages, including harm to its goodwill and reputation, diversion of consumers, and dilution of its famous TIKTOK marks.

**CLAIMS FOR RELIEF**

**FIRST COUNTERCLAIM FOR RELIEF**

*(Trademark Infringement Under Section 32(1) of the Lanham Act,*

*15 U.S.C. § 1114(1))*

*(Infringement of the Federally Registered TIKTOK Trademark Family)*

83. TikTok incorporates by reference the allegations contained in the foregoing Paragraphs as if fully set forth herein.

84. Count I is for federal trademark infringement under 15 U.S.C. § 1114.

85. TikTok has the exclusive right to use the TIKTOK Trademark Family in U.S. commerce. The fame of the TIKTOK Trademark Family means that TikTok has the right to exclude infringing uses for similar goods and services, as well as non-competing goods or services.

86. TikTok's exclusive rights in and to the TIKTOK Trademark Family predate any rights that Counterclaim Defendants could establish in and to the TIKT and/or TTOK trademarks.

87. As set forth in Paragraphs 33-37 *supra*, the TIKTOK Trademark Family is registered with the USPTO.

88. The TIKTOK Trademark Family is inherently distinctive.

89. The TIKTOK Trademark Family has acquired distinctiveness.

90. Counterclaim Defendants are using the infringing TIKT and TTOK trademarks in connection with ripping services for downloading images and videos from TikTok, without authorization from the original content creator(s).

- 43 -

91.    Counterclaim Defendants' use of the infringing TIKT and TTOK trademarks in interstate commerce in connection with its image and video ripping services is likely to continue to cause significant consumer confusion and to deceive consumers as to the affiliation, connection, approval, sponsorship or association of TikTok with Counterclaim Defendants.

92.    Counterclaim Defendants are targeting TikTok users and the parties' respective services appeal to overlapping customer bases.

93.    TikTok has not consented to Counterclaim Defendants' use of the infringing TIKT and TTOK trademarks in connection with its image and video ripping services, and TikTok acted promptly to stop such use when it learned that Tikt had filed the TIKT Application with the USPTO.

94.    Based on the federal registrations for the TIKTOK Trademark Family and TikTok's pervasive marketing, advertising, and third-party media coverage, as well as the fact that TikTok is a household name and cultural phenomenon with hundreds of millions of users in the U.S. alone, Counterclaim Defendants had actual and constructive knowledge of TikTok's superior rights in and to the TIKTOK Trademark Family. Counterclaim Defendants continue to use the TIKT and TTOK trademarks with actual knowledge of their infringing conduct.

95.    Counterclaim Defendants' adoption and use of marks confusingly similar to the TIKTOK Trademark Family is intentional and willful as demonstrated by the fact that the TIKT.com and TTOK.com websites, as well as the specimens submitted to the USPTO in connection with the TIKT Application and TTOK Application, explicitly state that Counterclaim Defendants' software is used to "download TikTok video, images, pins, GIF, Boards and TikTok profile content."

96.    Counterclaim Defendants continue to willfully use the TIKT and TTOK trademarks with actual knowledge of their infringing conduct.

97.    Upon information and belief, Counterclaim Defendants have made, and will continue to make, substantial profits and gain from use of the infringing TIKT

- 44 -

and TTOK trademarks in interstate commerce in connection with the image and video ripping services to which Counterclaim Defendants are not entitled at law or in equity.

98. Upon information and belief, Counterclaim Defendants' actions and conduct complained of herein constitute trademark infringement of the TIKTOK Trademark Family under 15 U.S.C. § 1114.

99. TikTok has suffered, and will continue to suffer, irreparable harm from Counterclaim Defendants' actions and conduct complained of herein, unless restrained by law.

100. TikTok has no adequate remedy at law.

### SECOND COUNTERCLAIM FOR RELIEF

*(Unfair Competition, False Endorsement, False Association, and False Designation of Origin Under Section 43(a)(1)(A) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A))*

*(Use of Marks Confusingly Similar to the TIKTOK Trademark Family)*

101. TikTok incorporates by reference the allegations contained in the foregoing Paragraphs as if fully set forth herein.

102. Count II is for federal unfair competition, false endorsement, false association, and false designation of origin under 15 U.S.C. § 1125(a).

103. TikTok has the exclusive right to use the TIKTOK Trademark Family in U.S. commerce. The fame of the TIKTOK Trademark Family means that TikTok has the right to exclude infringing uses for similar goods and services, as well as non-competing goods or services.

104. TikTok's exclusive rights in and to the TIKTOK Trademark Family predate any rights that Counterclaim Defendants could establish in and to the TIKT and/or TTOK trademarks.

105. The TIKTOK Trademark Family is inherently distinctive.

106. The TIKTOK Trademark Family has acquired distinctiveness.

- 45 -

107. Counterclaim Defendants are using the infringing TIKT and TTOK trademarks in connection with ripping services for downloading images and videos from TikTok, without authorization from the original content creator(s).

108. Counterclaim Defendants' use of the infringing TIKT and TTOK trademarks in interstate commerce in connection with its image and video ripping services is likely to continue to cause significant consumer confusion and to deceive consumers as to the affiliation, connection, approval, sponsorship or association of TikTok with Counterclaim Defendants.

109. Counterclaim Defendants are targeting TikTok users and the parties' respective services appeal to overlapping customer bases.

110. TikTok has not consented to Counterclaim Defendants' use of the infringing TIKT and TTOK trademarks in connection with its image and video ripping services, and TikTok acted promptly to stop such use when it learned that Tikt had filed the TIKT Application with the USPTO.

111. Based on the federal registrations for the TIKTOK Trademark Family and TikTok's pervasive marketing, advertising, and third-party media coverage, as well as the fact that TikTok is a household name and cultural phenomenon with hundreds of millions of users in the U.S. alone, Counterclaim Defendants had actual and constructive knowledge of TikTok's superior rights in and to the TIKTOK Trademark Family. Counterclaim Defendants continue to use the TIKT and TTOK trademarks with actual knowledge of their infringing conduct.

112. Upon information and belief, Counterclaim Defendants copied, adopted, and/or continue to use the infringing TIKT and TTOK trademarks in interstate commerce in connection with its image and video ripping services in furtherance of Counterclaim Defendants' willful, deliberate, and bad faith scheme to trade upon the extensive consumer goodwill, reputation, and commercial success of TikTok's short form video creation and sharing services and related services offered under the

TIKTOK Trademark Family in interstate commerce to which Counterclaim Defendants are not entitled at law or in equity.

113. Upon information and belief, Counterclaim Defendants' actions and conduct complained of herein constitute unfair competition, false endorsement, false association, and/or false designation of origin in violation of 15 U.S.C. § 1125(a).

114. TikTok has suffered, and will continue to suffer, irreparable harm from Counterclaim Defendants' actions and conduct complained of herein, unless restrained by law.

115. TikTok has no adequate remedy at law.

### THIRD COUNTERCLAIM FOR RELIEF

*(Unfair Competition, Cal. Bus. Prof. Code §§ 17200 et seq.)*

116. TikTok incorporates by reference the allegations contained in the foregoing Paragraphs as if fully set forth herein.

117. Count III is for California statutory unfair competition.

118. Counterclaim Defendants have engaged in unfair competition, including unfair, unlawful, and fraudulent business acts and practices and violations of California Business and Professions Code § 17200.

119. Counterclaim Defendants are knowingly using marks that are confusingly similar to, and intended to trade off the goodwill of, the TIKTOK Trademark Family.

120. Counterclaim Defendants' above-described actions, practices, and representations are made as part of a carefully orchestrated plan or scheme with the knowledge and intent that it will promote and enhance sales of its image and video ripping services.

121. Counterclaim Defendants' conduct in violation of § 17200 has caused and continues to cause actual and substantial damage to TikTok. TikTok has expended significant efforts and financial resources to develop its brand identity.

- 47 -

Counterclaim Defendants' unfair, unlawful, and deceptive conduct creates great risk to TikTok's business reputation and brand identity.

122. California consumers have been harmed as a direct, foreseeable, and proximate result of Counterclaim Defendants' actions and are threatened with continued harm. Consumers face harm that includes further consumer confusion.

123. Counterclaim Defendants have harmed and damaged TikTok in an amount to be determined at trial. TikTok seeks restitution or disgorgement of Counterclaim Defendants' profits, as well as injunctive relief enjoining Counterclaim Defendants, and all persons acting in concert with Counterclaim Defendants, from use of the infringing TIKT and/or TTOK trademarks, or any other marks that are confusingly similar to the TIKTOK Trademark Family.

## FOURTH COUNTERCLAIM FOR RELIEF

*(Unfair Competition and Trademark Infringement under California Common Law)*

*(Infringement of the TIKTOK Trademark Family)*

124. TikTok incorporates by reference the allegations contained in the foregoing Paragraphs as if fully set forth herein.

125. Count IV is for unfair competition and trademark infringement under California common law.

126. Upon information and belief, Counterclaim Defendants' actions and conduct complained of herein constitute unfair competition and trademark infringement under California common law.

## FIFTH COUNTERCLAIM FOR RELIEF

*(Federal Trademark Dilution Under 15 U.S.C. § 1125(c))*

*(Dilution of the Famous TIKTOK Trademark Family)*

127. TikTok incorporates by reference the allegations contained in the foregoing Paragraphs as if fully set forth herein.

128. Count V is for federal trademark dilution under 15 U.S.C. § 1125(c).

- 48 -

129. TikTok has the exclusive right to use the TIKTOK Trademark Family in U.S. commerce. The fame of the TIKTOK Trademark Family means that TikTok has the right to exclude infringing uses for similar goods and services, as well as non-competing goods or services.

130. TikTok's exclusive rights in and to the TIKTOK Trademark Family predate any rights that Counterclaim Defendants could establish in and to the infringing TIKT and/or TTOK trademarks.

131. As set forth in Paragraphs 33-37 *supra*, the TIKTOK Trademark Family is registered with the USPTO.

132. The TIKTOK Trademark Family is inherently distinctive.

133. The TIKTOK Trademark Family has acquired distinctiveness.

134. The TIKTOK Trademark Family is famous among the general consuming public.

135. The TIKTOK Trademark Family was famous when and prior to the time Counterclaim Defendants began using the confusingly similar TIKT and TTOK trademarks in interstate commerce for and/or in connection with its image and video ripping services.

136. Counterclaim Defendants' use of the infringing TIKT and TTOK trademarks in interstate commerce in connection with its image and video ripping services is likely to dilute the distinctive quality of the famous TIKTOK Trademark Family, such that the famous TIKTOK Trademark Family's established selling power and value, as well as the ability of the TIKTOK Trademark Family to exclusively identify TikTok as the source of TikTok's services, will be whittled away. Counterclaim Defendants' use of the infringing TIKT and TTOK trademarks is also likely to dilute through blurring and/or tarnishment the reputation of the famous TIKTOK Trademark Family, such that the famous TIKTOK Trademark Family's established ability to indicate the superior quality of TikTok's services will be diminished.

137. Based on the federal registrations for the TIKTOK Trademark Family and TikTok's pervasive marketing, advertising, and third-party media coverage, as well as the fact that TikTok is a household name and cultural phenomenon with hundreds of millions of users in the U.S. alone, Counterclaim Defendants had actual and constructive knowledge of TikTok's superior rights in and to the TIKTOK Trademark Family.

138. Upon information and belief, Counterclaim Defendants copied, adopted, and/or use the confusingly similar TIKT and TTOK trademarks in interstate commerce in furtherance of Counterclaim Defendants' willful, deliberate, and bad faith scheme to trade upon the extensive consumer goodwill, reputation, commercial success, and fame of products and services offered in connection with the TIKTOK Trademark Family.

139. Upon information and belief, Counterclaim Defendants have made, and will continue to make, substantial profits and gain from use of the infringing TIKT and TTOK trademarks in interstate commerce in connection with the image and video ripping services to which Counterclaim Defendants are not entitled at law or in equity.

140. Upon information and belief, Counterclaim Defendants' acts and conduct complained of herein constitute trademark dilution in violation of 15 U.S.C. § 1125(c).

141. TikTok has suffered, and will continue to suffer, irreparable harm from Counterclaim Defendants' acts and conduct complained of herein, unless restrained by law.

142. TikTok has no adequate remedy at law.

## SIXTH COUNTERCLAIM FOR RELIEF

*(Trademark Dilution, Cal. Bus. Prof. Code § 14247)*

*(Dilution of the Famous TIKTOK Trademark Family)*

143. TikTok incorporates by reference the allegations contained in the foregoing Paragraphs as if fully set forth herein.

144. Count VI is for trademark dilution under California Business and Professions Code § 14247.

145. Upon information and belief, Counterclaim Defendants' acts and conduct complained of herein constitute trademark dilution under California Business and Professions Code § 14247.

146. TikTok has suffered, and will continue to suffer, irreparable harm from Counterclaim Defendants' acts and conduct complained of herein, unless restrained by law.

147. TikTok has no adequate remedy at law.

## SEVENTH COUNTERCLAIM FOR RELIEF

*(Violation of the Anti-Cybersquatting Consumer Protection Act Under Section 43(d) of the Lanham Act, 15 U.S.C. § 1125(d))*

148. TikTok incorporates by reference the allegations contained in the foregoing Paragraphs as if fully set forth herein.

149. Count VII is for violation of the federal Anti-Cybersquatting Consumer Protection Act.

150. Counterclaim Defendants have registered (on information and belief) and are using the domain names TIKT.com and TTOK.com, which are highly similar to the TIKTOK Trademark Family, and are using these domain names in connection with the sale of its image and video ripping services in violation of 15 U.S.C. § 1125(d).

151. TikTok has not consented to Counterclaim Defendants' use of the infringing TIKT and/or TTOK trademarks.

152. Based on the federal registrations of the TIKTOK Trademark Family and TikTok's use of the same, as well as the fact that TikTok is a household name and cultural phenomenon with hundreds of millions of users in the U.S. alone, Counterclaim Defendants had actual and constructive knowledge of TikTok's superior rights in and to the TIKTOK Trademark Family prior to Counterclaim Defendants' adoption and use of the TIKT and TTOK trademarks, including the infringing domains TIKT.com and TTOK.com. Counterclaim Defendants continue to willfully use the infringing TIKT and TTOK trademarks, as well as the infringing domains TIKT.com and TTOK.com, with actual knowledge of their infringing conduct.

153. Counterclaim Defendants' use of the infringing TIKT and TTOK trademarks is likely to cause confusion among consumers as to the source, sponsorship, affiliation or endorsement of Counterclaim Defendants' website, business, and services, including its image and video ripping services specifically targeting TikTok.

154. Upon information and belief, Counterclaim Defendants registered or acquired the infringing TIKT.com and TTOK.com domains with a bad faith intent to profit, as evidenced by, *inter alia*: (i) their use of the infringing TIKT.com and TTOK.com domains in willful disregard of TikTok's rights; and (ii) Counterclaim Defendants' own websites instruct users to "Go to a TikTok.com URL and remove ik from the URL" to access Counterclaim Defendants' services—a clear admission that Counterclaim Defendants designed their domain names to capitalize on consumer confusion with TikTok's domain and marks.

155. The willful and intentional nature of the infringement and the reckless disregard by Counterclaim Defendants makes this false designation of origin an exceptional case pursuant to 15 U.S.C. § 1117(a), and, accordingly, TikTok is entitled to an accounting for profits, enhanced profits and damages, actual damages, costs, and reasonable attorneys' fees.

156.  As a result of Counterclaim Defendants' trademark infringement and cyber piracy, TikTok has suffered damages in an amount to be determined at trial.

157.  Upon information and belief, Counterclaim Defendants have gained profits by virtue of their infringement of the TIKTOK Trademark Family and cyber piracy related thereto.

158.  Counterclaim Defendants' unlawful conduct has caused and is causing great and irreparable harm to TikTok, its business, and goodwill, and unless Counterclaim Defendants are permanently restrained and enjoined by this Court, such irreparable harm will continue.

159.  TikTok lacks an adequate remedy at law and is therefore entitled to an injunction by the Court pursuant to 15 U.S.C. § 1116(a).

## EIGHTH COUNTERCLAIM FOR RELIEF

### (Unjust Enrichment)

160.  TikTok incorporates by reference the allegations contained in the foregoing Paragraphs as if fully set forth herein.

161.  Count VIII is for unjust enrichment.

162.  By infringing the TIKTOK Trademark Family and intentionally sowing consumer confusion by directing TikTok users to TIKT.com and TTOK.com, without permission from or compensation to TikTok for the use of the TIKTOK Trademark Family, Counterclaim Defendants have unjustly enriched themselves to the detriment of TikTok.

163.  As a consequence of Counterclaim Defendants' unjust enrichment, TikTok seeks restitution, disgorgement of Counterclaim Defendants' profits, or both.

## NINTH COUNTERCLAIM FOR RELIEF

*(Invalidation or Cancellation of Pending Trademark Applications Under*

*15 U.S.C. § 1119)*

*(TIKT Application, Serial No. 99/238,557 and TTOK Application, Serial No.*

*99/197,884)*

164. TikTok incorporates by reference the allegations contained in the foregoing Paragraphs as if fully set forth herein.

165. Count IX is for a federal declaratory judgment that the TIKT Application (Serial No. 99/238,557) and TTOK Application (Serial No. 99/197,884) pending with the USPTO should be invalidated, cancelled, or otherwise denied registration pursuant to 15 U.S.C. § 1119.

166. Pursuant to 15 U.S.C. § 1119, this Court has authority to determine the right to registration and rectify the register, including the power to decide disputes over trademark applications. In *BBK Tobacco & Foods, LLP v. Central Coast Agriculture, Inc.*, 97 F.4th 668 (9th Cir. 2024), the Ninth Circuit held that district courts have authority under 15 U.S.C. § 1119 to invalidate or cancel pending trademark applications, provided the case involves a registered mark—as this case does.

167. The Lanham Act refers to an "[a]pplication for use of trademark" as a "request [for] registration of [a] trademark on the principal register," and a challenge to an application thus necessarily affects the applicant's right to a registration. *See* 15 U.S.C. §§ 1119, 1051(b)(1). Consistent with *BBK Tobacco*, this Court may adjudicate the validity of Counterclaim Defendants' pending applications and order their cancellation or denial of registration.

168. As set forth above, an actual controversy exists among the parties as to the validity of the infringing TIKT Application and TTOK Application.

169. This action involves the registered TIKTOK Trademark Family and 15 U.S.C. § 1119 permits this Court to adjudicate trademark applications when the

action already involves a registered mark and a decision as to the validity of the TIKT Application and TTOK Application would advance the parties' interests by resolving all registration disputes in a single action. As in *BBK Tobacco*, the presence of TikTok's registered marks, including TIK TOK (Reg. No. 5653614), TIKTOK (Reg. No. 5981212), and others, satisfies the statutory requirement that the case involve at least one registered mark. *See* 97 F.4th at 680-82.

170. TikTok has been damaged and will continue to be damaged if the TIKT Application and/or TTOK Application are permitted to register.

171. The TIKTOK Trademark Family marks are highly distinctive with regard to all of TikTok's goods and services.

172. TikTok's trademark registrations for TIK TOK (Reg. No. 5653614, registered January 15, 2019), TIK TOK stylized (Reg. No. 5974902, registered February 4, 2020), TIKTOK (Reg. No. 5981212, registered February 11, 2020), and TIKTOK stylized (Reg. No. 5981213, registered February 11, 2020) predate Counterclaim Defendants' claimed dates of first use in commerce by more than five years.

173. Counterclaim Defendants deliberately selected marks that closely resembled TIKTOK—namely, by removing the letters "IK" from TIKTOK to create TTOK, and by removing the letters "OK" from TIKTOK to create TIKT—for the express purpose of trading on the fame and goodwill of TikTok's marks.

174. Counterclaim Defendants filed the TIKT Application and TTOK Application with actual knowledge of TikTok's prior rights and with the intent to trade off the goodwill and reputation of TikTok.

175. Counterclaim Defendants committed fraud on the USPTO when they knowingly submitted declarations that falsely represented that, to the best of the signatories' knowledge and belief, no other persons had the right to use marks in such near resemblance to TIKT and TTOK as to be likely to cause confusion. This representation was false because, at the time the TTOK Application was filed on

May 22, 2025, and at the time the TIKT Application was filed on June 17, 2025, Counterclaim Defendants actually knew that TikTok had prior rights in and to the TIKTOK Trademark Family and that the TIKT and TTOK marks so nearly resembled TikTok's trademarks as to be likely to cause confusion, mistake, or deception when used in connection with Counterclaim Defendants' goods and services.

176. Counterclaim Defendants committed fraud on the USPTO when they filed the applications for TIKT and TTOK on a Section 1(a) use in commerce basis, despite their knowledge that neither were making legitimate uses of their respective applied-for marks as source identifiers. Rather, Counterclaim Defendants selected the TIKT and TTOK marks solely to trade on the goodwill of TikTok's famous TikTok Trademark Family and to divert consumer traffic away from TikTok's platform by instructing users to manipulate TikTok's URL.

177. The circumstances of this case are analogous to those in *BBK Tobacco*, where the Ninth Circuit affirmed the district court's authority to cancel trademark applications filed with a lack of bona fide intent. Here, Counterclaim Defendants' applications were filed with knowledge of TikTok's prior rights and in bad faith, as evidenced by their own specimens of use which explicitly reference TikTok's platform and instruct users to manipulate TikTok's URLs.

178. TikTok has the exclusive right to use the TIKTOK Trademark Family in U.S. commerce. The fame of the TIKTOK Trademark Family means that TikTok has the right to exclude infringing uses for similar goods and services, as well as non-competing goods or services.

179. Counterclaim Defendants are targeting TikTok users and the parties' respective services appeal to overlapping customer bases.

180. Counterclaim Defendants' use of the infringing TIKT and TTOK trademarks in interstate commerce in connection with its image and video ripping services is likely to continue to cause significant consumer confusion and to deceive

consumers as to the affiliation, connection, approval, sponsorship or association of TikTok with Counterclaim Defendants.

181. If the TIKT Application and/or TTOK Application are permitted to proceed to registration, the public will be harmed as they will be caused to incorrectly conclude that Counterclaim Defendants are or have been affiliated or connected with TikTok, and/or that Counterclaim Defendants' services provided under the infringing TIKT and/or TTOK trademarks have been or are authorized, sponsored, endorsed, or licensed by TikTok. Registration of the TIKT Application and/or TTOK Application will result in damage to TikTok and the public. Therefore, the TIKT Application and TTOK Application should be invalidated, cancelled, or otherwise denied registration.

182. Counterclaim Defendant Tikt did not respond to TikTok's January 8, 2026, letter demanding that it withdraw the TIKT Application and instead, without any attempt at good faith negotiation with TikTok and with unclean hands, proceeded to file the Complaint for declaratory judgment of non-infringement.

183. There exists an actual, immediate, real, and substantial controversy between the parties having adverse legal interests regarding registration of the TIKT Application and TTOK Application.

184. For the reasons set forth above, TikTok is entitled to a declaratory judgment that:

a. Counterclaim Defendants have no ownership, authority, control, rights, title, and/or interest in the infringing TIKT and TTOK trademarks and may exercise no rights in, or utilize in any way, such marks as a source identifier;

b. TikTok is the sole owner of the TIKTOK Trademark Family; and

c. The TIKT Application and TTOK Application must be invalidated, cancelled, or otherwise denied registration pursuant to 15 U.S.C. § 1119.

## **PRAYER FOR RELIEF**

WHEREFORE, as a result of the unlawful acts of Counterclaim Defendants set forth in each of the counts above, TikTok prays that the Court enter a judgment against Counterclaim Defendants as follows:

a) Preliminary and permanently enjoining Counterclaim Defendants and their agents, servants, employees, officers, and all persons in active concert and participation with them:

(i) From using the TIKTOK Trademark Family or any confusingly similar marks, including the TIKT and TTOK trademarks, in connection with the advertising, promotion, or sale of any goods or services, including Counterclaim Defendants' image and video ripping services;

(ii) From using any logo, trade name, or trademark that may be calculated to falsely represent or has the effect of falsely representing that Counterclaim Defendants or their services are sponsored by, authorized by, or in any way associated with TikTok, the TikTok brand, or any of the TIKTOK Trademark Family marks;

(iii) From infringing the TIKTOK Trademark Family;

(iv) From diluting the famous TIKTOK Trademark Family;

(v) From falsely representing themselves (expressly or implicitly) as being connected with, sponsored by, or associated with TikTok or the TikTok brand;

(vi) From using the domain names TIKT.com and TTOK.com or any other domain names confusingly similar to the TIKTOK Trademark Family; and

- 58 -

(vii)    From operating, maintaining, or promoting services that enable the unauthorized downloading of copyrighted content from TikTok's platform.

b) Ordering Counterclaim Defendants to transfer to TikTok all rights in the domain names TIKT.com and TTOK.com pursuant to 15 U.S.C. § 1125(d)(1)(C).

c) Ordering the destruction of all materials bearing any copy or colorable imitation of the TIKTOK Trademark Family, including all advertising, promotional, and marketing materials for the infringing TIKT and TTOK services.

d) Pursuant to 15 U.S.C. § 1116(a), ordering Counterclaim Defendants to file with the Court and serve upon TikTok's counsel, within thirty (30) days after service of the order of injunction, a report in writing under oath setting forth in detail the manner and form in which Counterclaim Defendants have complied with the injunction.

e) Finding that, by the acts complained of above, Counterclaim Defendants have infringed TikTok's TIKTOK Trademark Family in violation of 15 U.S.C. § 1114.

f) Finding that, by the acts complained of above, Counterclaim Defendants have engaged in unfair competition, false designation of origin, false association, and/or false endorsement in violation of 15 U.S.C. § 1125(a).

g) Finding that, by the acts complained of above, Counterclaim Defendants have diluted the famous TIKTOK Trademark Family in violation of 15 U.S.C. § 1125(c).

h) Finding that, by the acts complained of above, Counterclaim Defendants have violated the Anti-Cybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d).

i) Finding that, by the acts complained of above, Counterclaim Defendants have engaged in unfair competition and trademark infringement in violation of California Business and Professions Code §§ 17200 et seq. and § 14247, and California common law.

j) Finding that Counterclaim Defendants' acts complained of above constitute willful infringement of the TIKTOK Trademark Family.

k) Finding that Counterclaim Defendants' acts complained of above render this case "exceptional" within the meaning of 15 U.S.C. § 1117(a).

l) Ordering invalidation, cancellation, or denial of registration of the pending trademark applications for TIKT (Serial No. 99/238,557) and TTOK (Serial No. 99/197,884) pursuant to 15 U.S.C. § 1119.

m) Declaring that Counterclaim Defendants have no ownership, authority, control, rights, title, or interest in the TIKT and TTOK trademarks and may exercise no rights in such marks as source identifiers.

n) Ordering Counterclaim Defendants to provide TikTok with a full accounting of all sales, revenues, and profits derived from goods or services sold under the infringing TIKT and TTOK trademarks and through the TIKT.com and TTOK.com domains.

o) Ordering Counterclaim Defendants to pay TikTok:

(i) Counterclaim Defendants' profits derived from use of the infringing TIKT and TTOK trademarks and domains;

(ii) Treble damages in connection with Counterclaim Defendants' willful infringement pursuant to 15 U.S.C. § 1117(a);

(iii) Statutory damages of up to $100,000 per domain name for violations of the Anti-Cybersquatting Consumer Protection Act pursuant to 15 U.S.C. § 1117(d);

(iv) TikTok's costs and reasonable attorneys' fees incurred in this matter pursuant to 15 U.S.C. § 1117(a);

p) Ordering restitution and/or disgorgement of Counterclaim Defendants' profits pursuant to California Business and Professions Code § 17200.

q) Awarding TikTok pre-judgment and post-judgment interest.

r) Awarding TikTok such other and further relief as the Court may deem just and proper.

s) Granting TikTok preliminary injunctive relief, pending final resolution of this action, enjoining Counterclaim Defendants from (i) using the TIKT and TTOK marks or any confusingly similar marks; and (ii) operating the TIKT.com and TTOK.com websites or any confusingly similar domains.

## **JURY DEMAND**

TikTok requests a trial by jury for all issues so triable pursuant to Fed. R. Civ. P. 38(b).

Respectfully submitted,

MAYER BROWN LLP

Dated: April 20, 2026                    By: */s/ A. John P. Mancini*

A. JOHN P. MANCINI (*pro hac vice admitted*)
jmancini@mayerbrown.com
GINA M. PARLOVECCHIO
gparlovecchio@mayerbrown.com (*pro hac vice admitted*)
1221 Avenue of the Americas
New York, NY 10020-1001
Telephone:   (212) 506-2500

KRISTINE M. YOUNG (*pro hac vice admitted*)
kyoung@mayerbrown.com
71 S. Wacker Drive
Chicago, IL 60606
Telephone:   (312) 782-0600

SOPHIA M. MANCALL-BITEL (SBN 337002)
smancall-bitel@mayerbrown.com
333 South Grand Avenue, Suite 4700
Los Angeles, CA 90071
Telephone:   (213) 229-9500

*Attorneys for Defendants/Counterclaim Plaintiffs*
TikTok Ltd., TikTok USDS Joint Venture LLC, and TikTok Inc.